**356**

Ronald Lee MULLINS, Appellant,

v.

Darrell WYATT and Danny
L. Meade, Appellees.

No. 93–SC–758–DG.

Supreme Court of Kentucky.

Nov. 23, 1994.

Harold W. Thomas, S. Stewart Pope,
Thomas & Dodson, Louisville, for appellant.

Mark E. Edison, Shepherdsville, John
Paddock, Louisville, for appellees.

LAMBERT, Justice.

■ The issue presented is whether KRS 355.2–607(3)(a) makes pre-litigation notice a condition precedent to a civil action for breach of warranty of title, or whether service of the summons and complaint satisfies the notice requirement. As this issue appears to be of first impression, we granted discretionary review.

The facts are uncomplicated. On or about May 20, 1988, appellee Wyatt purchased a 1984 Chevrolet Corvette automobile from appellant Mullins for the sum of $15,000. Prior to the purchase, Wyatt searched the title in the appropriate Kentucky County Court Clerk's office and in the states of Indiana and Ohio. The examination revealed no title defect. About eighteen months after the purchase, however, the Kentucky State Police seized the automobile from Wyatt as a stolen motor vehicle.[1]

Wyatt attempted to contact Mullins but learned that he had moved to the State of Florida. With the assistance of an attorney and an investigator in Florida, Mullins was promptly located. According to the evidence, Wyatt learned Mullins' whereabouts in January of 1990, but for the next ten months, Wyatt did not notify Mullins or take any other action by which Mullins would have learned of the motor vehicle seizure. Notice was first given in November of 1990 when Wyatt filed a civil action against Mullins and caused a summons and complaint to be served on him. After service of the summons and complaint, Mullins brought a third-party claim against his vendor, appellee Danny L. Meade.[2]

In due course, Mullins moved for summary judgment on the grounds that Wyatt had not complied with KRS 355.2–607(3)(a) by failing to give pre-litigation notice of breach of war-

---

1. It is uniformly held that a seizure by police of goods sold to a buyer on the ground that the goods were stolen establishes a breach of the seller's warranty of title. This is so because at a minimum, the seizure casts a substantial doubt over the purchaser's title regardless of the outcome of litigation. 67A AmJur2d, § 809, *Sales.*

2. To prevent any implication to the contrary, it should be stated that none of the parties to this litigation have alleged that the other knew the vehicle was stolen. It is agreed that these parties were all innocent purchasers of the stolen motor vehicle.

ranty of title. The motion was sustained and judgment was rendered in favor of Mullins. Wyatt's complaint was dismissed with prejudice. Wyatt appealed to the Court of Appeals.

A divided panel of the Court of Appeals reversed. The issue was stated as follows:

> ... whether the service of a summons and an accompanying complaint can satisfy the notice requirement of KRS 355.2–607(3)(a). If not, no notice was given, and there is no issue as to whether or not the notice was reasonably timely. Consequently, Wyatt's complaint would be deficient, and Mullins would be entitled to a judgment in his favor on that complaint as a matter of law. However, if the complaint can serve as notice under KRS 355.2–607(3)(a), then whether such notice was given within a reasonable time would be a genuine issue of a material fact, making summary judgment improper under the standard announced in *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991).

Reasoning appropriately from our decision in *Leeper v. Banks,* Ky., 487 S.W.2d 58 (1972), the Court of Appeals held that notice by means of litigation was sufficient, for if *Leeper* had intended to exclude the commencement of litigation as notice, whether it was given in a reasonable time would have been superfluous. It concluded that as timeliness was addressed and held to be decisive, failure to give pre-litigation notice was not fatal to the claim.

The statute before the Court, KRS 355.2–607(3)(a), is as follows:

> (3) Where a tender has been accepted
> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; ...

At the outset, we observe that the statutory requirements are inexplicit and probably ambiguous. At best there is an implication that notice must be given prior to the commencement of litigation, but the statute is silent as to the content of the notice or even whether it must be in writing. The major emphasis seems to be upon notice "within a reasonable time," the construction given in *Leeper v. Banks, supra.* In sum, there is a dissonance between the casual tone of the statute and a result so draconian as dismissal.

In contrast to the statute here is KRS 376.010, the mechanic's and materialman's lien statute, a true pre-litigation notice statute. In unmistakable terms, acquisition of a lien and an action for its enforcement must follow the particularity of the statute and there could be no legitimate doubt that the notice provisions represent conditions precedent. *Laferty v. Wickes Lumber Co.,* Ky. App., 708 S.W.2d 107 (1986). In *Laferty,* the court analyzed the purpose of notice requirements and its conclusions are worthy of repetition here. First, observance of the requirements of the mechanic's lien statute permits a creditor to convert an unsecured debt into one secured by a lien upon the owner's real property even though they have not dealt with one another. Such a structural change alone is sufficient to justify the requirement of pre-litigation notice. Second, the purpose of the notice statute is to inform the owner of the nature and amount of the claim so that he may protect himself in future dealings with the middle man, usually a contractor, and retain funds with which to pay the supplier or require the middle man to discharge the indebtedness. Neither of these reasons for pre-litigation notice is applicable when the claim is for breach of warranty of title.

We are well aware that text writers and most decisional law treat pre-litigation notice as a condition precedent to the bringing of a civil action for breach of warranty. An examination of the authorities reveals that the only substantial reason for the requirement is the opportunity for settlement, sometimes expressed as performance or cure. This is stated in Leibson and Nowka, *Kentucky Uniform Commercial Code* (2d ed.) § 2.4(b)(2) as follows:

> Filing of a lawsuit should not ordinarily suffice as a section 2–607(3)(a) notification even if done within a reasonable time after the buyer discovers the breach. Even though claims are often settled after suit is filed, the underlying goal of the notice requirement of section 2–607(3)(a) is to facilitate performance or settlement. The

filing of a lawsuit does not ordinarily accomplish this goal.

A similar view appears in 67A AmJur2d, *Sales* § 1258, and 3 *Williston on Sales* (4th ed.) § 22–11.

In our view, an opportunity for pre-litigation settlement is simply insufficient to justify holding claims for breach of warranty without pre-litigation notice to be barred, particularly when proponents of the requirement acknowledge that it could be met by a mere telephone call immediately before the suit is filed. Moreover, the views frequently expressed in legal text and decisional law naively assume that all parties to sales transactions act only in good faith. Experience teaches that some sellers of goods wish to evade answering breach of warranty claims and actually leave their place of residence to avoid service of a summons or conceal themselves so that a summons cannot be served upon them. CR 4.05(d). The circumstances which prevailed here (sale of a stolen vehicle and departure from the state) might well have suggested to the purchaser that the seller would not welcome notice of the breach and that he would have resisted recovery by the purchaser. In any event, it is understandable that the purchaser may have feared that pre-litigation notice to his vendor would be to his detriment.

This Court is always reluctant to depart from the mainstream of American law, but in circumstances where the majority rule lacks convincing textual foundation and the reasons for it are unpersuasive, it is our duty to question the rule and consider whether it may be in error. With respect to KRS 355.2–607, there is simply an insufficient basis in text or in logic to require peremptory application of a pre-litigation notice rule. When this is considered beside what may be good and valid reasons in a proper case to refrain from pre-litigation notice, it must follow that failure to give the notice is not fatal to a civil action for breach of warranty.

█ The Court of Appeals remanded this cause to the trial court. It held that whether the litigation notice given here was "within a reasonable time" should be determined as an issue of fact. Inasmuch as the reasonable time requirement is in derogation of an otherwise applicable statute of limitations, it should be determined upon equitable principles with Mullins being required to show that the delay in giving him notice was unreasonable and prejudicial.

We affirm the Court of Appeals and remand to the trial court for further proceedings consistent herewith.

LEIBSON, REYNOLDS and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which SPAIN and STUMBO, JJ., join.

STEPHENS, Chief Justice, dissenting.

The majority's treatment of KRS 355.2–607 does extreme disservice to the stated purposes of the Uniform Commercial Code. The majority asserts that "there is simply an insufficient basis in text or in logic to require peremptory application of a pre-litigation notice rule." With this, I simply cannot agree.

The statute states "the buyer *must* within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from *any* remedy." KRS 355.2–607 (emphasis added). The text of the statute itself clearly indicates that there must be notice of breach *before* any remedy can be pursued. The remedy this consumer undertook was court action. No notice was given to the seller that this action was being undertaken. Therefore, litigation as a remedy is barred pursuant to the statute.

The majority distorts the purpose of this code provision by shifting the analytical focus of this section from the notice requirement to the reasonable time requirement. While this approach enables the Court to reach a result that may be more palatable when considering the facts presented in this case, it does irreparable damage to the Uniform Commercial Code when reviewed in terms of its overall objections. My colleagues suggest that this interpretation enables the consumer who is the victim of a transaction undertaken in bad faith to be assured a proper avenue of recovery. Emphasizing that it is possible this "seller might not have welcomed notice of the

breach and that he may have intended to frustrate recovery by the purchaser," the majority utilizes a tempting analytical process to reach a desired result. However, by disposing entirely of the pre-litigation notice requirement, a much larger number of commercial transactions where a breach has occurred, but not in bad faith, are deprived of the protective devices established by the code for all parties to commercial transactions.

It is not necessary to hold that no notice is necessary to ensure an equitable outcome in the instant case if the proper reading of KRS 355.2–607 is made by this Court. When reviewing compliance to this statute, the analysis that should be undertaken is a two step process. First, the Court must determine if a pre-litigation notice has been given. Second, we should ask whether this pre-litigation notice was given within a reasonable time. By employing this two step process, all interested parties are protected.

The first step of the analysis, giving notice, protects the seller from unsuspected litigation, "open[ing] the way for negotiation of a normal settlement.... The purpose of [this] requirement is to enable the seller to minimize damages in some way." Leibson and Nowka, *Kentucky Uniform Commercial Code* (2d ed.) § 2.4(b)(2). In recognizing that the Uniform Commercial Code is designed to apply to all consumer transactions involving the sale of goods, not just those undertaken in bad faith, it is imperative that this protection for the good faith seller not be disposed of by this ruling.

At first glance, the second step of the analysis, the reasonable time requirement, appears to provide protection for the seller only. However, this requirement provides a safety net for the consumer when necessary, such as in situations where the statute of limitations may be at issue or where other factual issues suggest a need for a shortened period of time prior to commencement of litigation. What constitutes a reasonable time becomes a factual question to be addressed by the factfinder so long as the first requirement of notice has been met.

In the present case, the consumer could have provided notice prior to filing his complaint but could have proceeded immediately thereafter with court action. The consumer, who was represented by counsel, had no reason not to be aware of the notice requirement as stated in KRS 355.2–607(3). If the seller had presented the issue of reasonable time as a defense, the consumer could have presented the factual situation to be taken into account. The factfinder could have then determined if notice within a reasonable time had been given.

By accepting that this is the proper method of procedure, all parties' interests in the conflict are protected. All interested parties—consumers and sellers—including those sellers acting in good faith, are provided the benefits of pre-litigation notice as contemplated by the code drafters. Sellers have the opportunity to offer settlement and consumers are potentially able to avoid the expense of litigation as well. Furthermore, the consumer subjected to a bad faith seller can rely upon the determination of what a "reasonable time" should be in his/her case through successful allegation of unfavorable factors once the factfinder establishes there was notice given.

This Court has previously recognized these policy goals when we held that it is "incumbent upon [a buyer] to give notice to [a seller] within a reasonable time after she discover[s] the alleged breach of the implied warranty if she [intends] to sue him." *Leeper v. Banks*, Ky., 487 S.W.2d 58, 59 (1972). The rule of law put forth in *Leeper* directly applies to the case sub judice and there is absolutely no need to change that holding.

The majority has read too much into the *Leeper* opinion, stating that because we addressed the reasonable time question in *Leeper*, this implies that we did not intend to exclude the commencement of litigation as proper notice. I fail to follow this reasoning. In *Leeper* the question addressed by this Court was whether this notice to another party could serve as notice to the retailer of the can of starch, the party sued in the action. We held it did not constitute notice, so appellant was "barred from any remedy" as required by the statute. There is nothing in *Leeper* that even minutely suggests the

only necessary inquiry under § 2–607 is whether some type of notice, commencement of litigation or otherwise, was made within a reasonable time.

We can also turn to the commentary of the Uniform Commercial Code to gain an understanding of the intentions of the drafters of this statute because it provides the structural basis for each provision. It states "the rule of requiring notification is designed not to deprive a good faith consumer of his remedy." § 2–607 Official Code Comment. The Code commentary recognizes that the reasonable time requirement is the safety valve that ensures a good faith consumer will not be deprived. The commentary states "[a] reasonable time for notification from a retail consumer is to be judged by different standards.... for the rule of requiring notification is designed to defeat commercial bad faith." *Id.* The commentary also recognizes that by notifying the seller of a breach, he has the "opportunity to correct any defect or to adjust the matter by negotiation." Anderson, *Uniform Commercial Code* (3d Ed.) § 2–607:4. The majority has precluded the possibility that these goals be achieved in either a setting of good faith or bad faith by holding that pre-litigation notice is not necessary.

We can also turn to other states for guidance on this issue. This is a *necessary* inquiry so we can maintain the needed uniformity among states to ensure that the most beneficial aspects of the Uniform Commercial Code are preserved. These benefits include legal consistency for all participants in interstate commercial transactions as well as providing a uniform system nationwide whereby consumer transactions can be handled outside the courtroom. An overwhelming number of states have held that pre-litigation notice is a condition precedent to an action for breach of warranty. *See e.g., Parker v. Bell Ford, Inc.,* Ala., 425 So.2d 1101 (1983) (notice as required by § 2–607(3)(a) is a precedent to recovery); *Lynx, Inc. v. Ordnance Products, Inc., et al.,* 273 Md. 1, 327 A.2d 502 (1974) (institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of a breach); *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.,* 686

F.Supp. 1319 (N.D.Ill., 1988) (litigation filings alone are unacceptable vehicle for giving notice of breach of warranty); *Armco Steel Corp. v. Isaacson Structural Steel Co.,* Alaska, 611 P.2d 507 (1980) (complaint filed in third-party action against supplier for breach of delivery terms of contract for specially fabricated steel did not satisfy UCC's notice of breach requirement); *Smith v. Stewart,* 233 Kan. 904, 667 P.2d 358 (1983) (giving notice of defect is condition in precedent for filing action).

While the majority asserts that there is no need to follow the commonly accepted approach when there is no basis in logic for the accepted rule, I disagree. First, I believe the logic is clear. Second, when an overriding purpose is to ensure uniformity in the law, it becomes that much more important to consider other states' interpretations of similar laws. For this reason alone, I believe the holding of the majority is destructive. Further, one essential underlying premise of the Uniform Commercial Code, which is to provide a system whereby consumer transactions can be handled outside the courtroom, is dealt a devastating blow by the holding of the majority.

For the foregoing reasons, I dissent.

SPAIN and STUMBO, JJ., join this dissent.